IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

IRMA PENA-BOSQUE and JOSE BOSQUE, )
)
        Plaintiffs, )
)
    v. )
) No. 04 C 3760
ELGIN POLICE DETECTIVES JIM LALLEY, )
TOM WOLEK, CHRIS JENSEN, DARREN )
MONTFORTI, ANA LALLEY, TOM CLANCY, )
ROBERT PTAK, SERGEANT GARY NEAL, )
LIEUTENANT SCOTT DAVIS, OFFICER TOM )
HILL, JEFFREY SCHULTZ, STEVE BIANCHI, )
and MARSHALL KITE, )
)
        Defendants. )

## MEMORANDUM OPINION AND ORDER

AMY J. ST. EVE, District Court Judge:

Plaintiffs Irma Pena-Bosque and Jose Bosque ("Plaintiffs") filed the present Complaint alleging that Defendant Elgin Police Officers unreasonably executed a search warrant in violation of their Fourth Amendment right against unreasonable searches and seizures. *See* 42 U.S.C. § 1983. Before the Court is Defendant Police Officers Chris Jensen's and Jim Lalley's Motion for Partial Summary Judgment pursuant to Federal Rule of Civil Procedure 56(c).[1] For the following reasons, the Court grant Defendants' Motion for Partial Summary Judgment.

### BACKGROUND

**I.**     **The Search Warrant**

---

[1] The only remaining Defendants in this matter are Officers Jim Lalley, Chris Jensen, and Steve Bianchi. The parties agree that Plaintiffs' unreasonable force claim against Officer Steve Bianchi will proceed to trial. (R. 33-1, Pls.' Opp. Memo. at 2 n.2.)

At all times relevant to this matter, Defendant Jim Lalley ("Lalley") was a detective and Defendant Chris Jensen ("Jensen") was a police officer with the Gang Crimes Unit of the City of Elgin Police Department. (R. 29-1, Defs.' Rule 56.1 Stmt. Facts ¶¶ 4, 5.) Sometime in early July 2002, Detective Lalley applied for a warrant to search Plaintiffs' home at 256 South Lyle, Elgin, Illinois for instruments or articles that had been used in the commission of the unlawful possession of a firearm and firearm ammunition under Illinois statutes 430 ILCS 65/2 and 720 ILCS 5/24-3.1. (*Id.* ¶ 11.) As part of the application for the search warrant, Detective Lalley stated that a confidential informant had seen Plaintiffs' son, Sergio Bosque, with a firearm in Plaintiffs' home and that Sergio Bosque was a known member of the Latin Kings street gang. (*Id.* ¶ 12.) A judge for the Circuit Court for the Sixteenth Judicial Circuit of Kane County, Illinois, Criminal Division, issued the search warrant authorizing a search of 256 South Lyle for the following items: (1) any and all firearms; (2) any and all firearm ammunition; (3) any and all firearm related items; (4) items of indicia of residency and or control of the premises; and (5) any and all items of indicia of gang violence. (*Id.* ¶ 13.)

## II. Tactical Response Team

The Elgin Police Department's Standard Operating Procedure requires that the Tactical Response Team ("TRT") execute search warrants when there is a possibility that suspects involved in the search might be armed with firearms or dangerous weapons, have a significant history of violence, or if other special circumstances exist. (*Id.* ¶ 14.) Because the search warrant at issue here included authorization to seize firearms, Detective Lalley involved the TRT to execute the warrant at 256 South Lyle pursuant to these standard procedures. (*Id.* ¶ 16.)

Before executing the search warrant, Detective Lalley assigned police officers to conduct

surveillance of Plaintiffs' home. (*Id.* ¶ 17.) These officers reported to Detective Lalley that the individuals they observed on that day bore no relation to the warrant and had no criminal background. Detective Lalley relayed this information to the TRT supervisor. (*Id.* ¶¶ 17, 18.)

### III. Execution of the Search Warrant

On July 10, 2002, one of the team leaders informed the TRT officers that they intended to execute a search warrant at 256 South Lyle, and it posed a high risk because a weapon might be involved. (*Id.* ¶ 19.) The TRT officers planned to enter the home and secure any individuals so that the search team could perform the search. (*Id.* ¶ 20.) That evening, the TRT officers wore black ballistic helmets over black hoods that exposed their eyes and noses. (*Id.* ¶ 21.) The officers also wore protective eye glasses, body armor, black load-bearing vests with "POLICE" written on them, black tactical belts, black cargo pants, and black boots. (*Id.*; R. 34-1, Pls.' Rule 56.1 Stmt. Facts ¶ 6.) The TRT officers carried firearms. (R. 29-1, Defs.' Rule 56.1 Stmt. Facts ¶ 21.)

Shortly after 9 p.m., Sergeant Rafferty knocked on the front door at 256 South Lyle and announced the police officers' presence. (*Id.* ¶ 22.) Sergeant Rafferty testified that he knocked on the Plaintiffs' front door yelling "Elgin Police, search warrant, Elgin Police, search warrant." (R. 38-1, Defs.' Response, Pls.' Rule 56.1 Stmt. Facts ¶ 3.) Eventually, the police officers forced open the front door using a metal ram. (R. 29-1, Defs.' Rule 56.1 Stmt. Facts ¶ 23.) After entering Plaintiffs' home, some police officers went up the main staircase immediately inside the front door, while other police officers went down the main staircase. (*Id.* ¶ 24.)

While the other police officers were executing the search warrant, Officer Jensen was in Plaintiffs' backyard. (*Id.* ¶ 26.) His role was to stop anyone who ran out of the back door while

3

the TRT officers entered and secured the home. (*Id.*) Officer Jensen eventually entered Plaintiffs' home to assist with the search after which he searched the contents of dresser drawers, emptying the contents of the drawers on the floor. (*Id*. ¶¶ 27, 28.) Officer Jensen did not pick up the contents of the drawers when he finished searching them. (*Id*. ¶ 29.)

Meanwhile, Detective Lalley went through Plaintiffs' entire home and stated that during the search, he observed search team members put items on the floor and that the officers did not pick up the items after their search. (*Id.* ¶¶ 31, 32; R. 34-1, Pls.' Rule 56.1 Stmt. Facts ¶ 14.) In his deposition testimony, Detective Lalley explained that during a search, after a police officer searches an item, he places the item in one area of the room so that the other police officers know that officers have already searched those items. (R. 29-1, Defs.' Rule 56.1 Stmt. Facts ¶ 33.) The search of Plaintiffs' home lasted approximately one hour, and the officers did not find any firearms or ammunition that were the subject of the search warrant. (*Id*. ¶¶ 37, 38.)

Both Irma Pena-Bosque and Jose Bosque were home during the search. (R. 34-1, Pls.' Rule 56.1 Stmt. Facts ¶ 1.) At her deposition, Irma Pena-Bosque testified that when she got up from bed she saw armed people dressed in black and wearing masks and that she did not know that these people were police officers. (*Id.* ¶¶ 2, 3.) She also testified that she felt terrorized and thought the people dressed in black were going to burglarize her home. (*Id.* ¶ 7.)

## **SUMMARY JUDGMENT STANDARD**

Summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). A genuine issue of material fact exists only if "the evidence

is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). The party seeking summary judgment has the burden of establishing the lack of any genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). In determining whether a genuine issue of material fact exists, the Court construes the facts in a light most favorable to the non-moving party and draws all reasonable inferences in favor of that party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. at 255.

## ANALYSIS

### I. Fourth Amendment Claim

Plaintiffs argue that Detective Lalley and Officer Jensen violated their Fourth Amendment rights, specifically the Warrant Clause of the Fourth Amendment, by unreasonably executing the search warrant.[2] *See* 42 U.S.C. § 1983. Section 1983 provides a cause of action against any person who, acting under color of state law, deprives another person of a right, privilege, or immunity secured by the United States Constitution or federal laws. *See* 42 U.S.C. § 1983; *Lekas v. Briley,* 405 F.3d 602, 606 (7th Cir. 2005).

### II. Qualified Immunity

Detective Lalley and Officer Jensen argue that they are shielded from this civil lawsuit based on qualified immunity. *See Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). "As the qualified immunity defense has evolved, it provides ample protection to all but the plainly incompetent or those who knowingly violate the law." *Malley v.*

---

[2] Plaintiffs do not dispute that the judge properly issued the search warrant nor do they argue that defendants exceeded the scope of the warrant. (R. 33-1, Pls.' Opp. Memo. at 1-2.)

*Briggs,* 475 U.S. 335, 341, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986). When determining whether qualified immunity shields a police officer from a Section 1983 action, courts must undertake a two-part inquiry. *Saucier v. Katz,* 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001); *Jones v. Wilhelm,* 425 F.3d 455, 460 (7th Cir. 2005). The first inquiry is whether the facts, viewed in the light most favorable to the plaintiff, show that defendant police officers violated a constitutional right. *Saucier,* 533 U.S. at 201; *Wilhelm*, 425 F.3d at 460. If the alleged facts state a constitutional violation, courts then determine whether the constitutional right was clearly established at the time of the police officers' conduct. *Saucier,* 533 U.S. at 201; *Wilhelm*, 425 F.3d at 460.

### A.     Alleged Violation of Constitutional Rights

Under the first step of the *Saucier* inquiry, the Court must determine whether Detective Lalley and Officer Jensen violated Plaintiffs' constitutional rights when they executed the search warrant. The Constitution of the United States guarantees that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause." U.S. Const. amend. IV. As such, the Fourth Amendment requires that police officers act reasonably in conducting searches. *Tennessee v. Garner*, 471 U.S. 1, 7-8, 105 S.Ct. 1694, 85 L.Ed.2d 1 (1985). "[I]t is generally left to the discretion of the executing officers to determine the details of how best to proceed with the performance of a search authorized by the warrant – subject to the general Fourth Amendment protection against unreasonable searches and seizures." *Dalia v. United States,* 441 U.S. 238, 257, 99 S.Ct. 1682, 60 L.Ed.2d 177 (1979) (quotations omitted). The Court determines whether the police officers' actions were reasonable by examining the totality

6

of the circumstances. *Garner*, 471 U.S. at 9.

Here, Plaintiffs make two arguments to support their claim that the officers unreasonably executed the warrant: (1) "the warrant was executed by what appeared to plaintiffs to be a masked group of terrorists, who were in fact members of a SWAT team;" and (2) after the officers executed the search warrant, they did not attempt to "clean up" Plaintiffs' home. (R. 33-1, Pls.' Opp. Memo. at 5.)

### 1. SWAT Team Argument

Under Plaintiffs' first theory, they argue "that the SWAT team executed the warrant in an unreasonable manner, and that defendant Lalley is liable for the SWAT team's unreasonable actions." (*Id.* at 6-7.)[3] Plaintiffs, however, do not explain how Detective Lalley can face liability for the alleged constitutional violations based on the other officers' conduct.

For an individual to be liable under Section 1983, he must have caused or participated in the alleged constitutional violation. *Pepper v. Village of Oak Park,* 430 F.3d 805, 810 (7th Cir. 2005). "Section 1983 creates a cause of action based on personal liability and predicated upon fault; thus, liability does not attach unless the individual defendant caused or participated in a constitutional deprivation." *Vance v. Peters*, 97 F.3d 987, 991 (7th Cir. 1996). In other words, Plaintiffs must establish that Detective Lalley "acquiesced in some demonstrable way in the alleged constitutional violation." *Palmer v. Marion Cty.,* 327 F.3d 588, 594 (7th Cir. 2003). Plaintiffs have failed to argue, let alone establish, that Detective Lalley caused or participated in the alleged violation of their constitutional rights.

---

[3] Plaintiffs acknowledge that Officer Jensen was not part of the "SWAT team," and have made no arguments concerning Officer Jensen under their "SWAT team claim." (R. 33-1, Pls.' Opp. Memo. at 3.)

Further, although Detective Lalley was the complainant for the search warrant and decided to involve the TRT, it is unclear from the record if he supervised the TRT members when they executed the warrant. Nevertheless, even if he did supervise these officers, there is no evidence in the record that Detective Lalley was personally involved in the alleged constitutional violation. Supervising police officers satisfy the personal responsibility requirement if the conduct causing the constitutional violation occurred at the supervisor's direction or with his knowledge and consent. *Hildebrandt v. Illlinois Dep't of Natural Res*., 347 F.3d 1014, 1039 (7th Cir. 2003) (citation and quotations omitted). "In short, some causal connection or affirmative link between the action complained about and the official sued is necessary for § 1983 recovery." *Id.* Again, Plaintiffs fail to argue, let alone establish, any causal connection or affirmative link between the other officers' conduct and Detective Lalley. As such, Plaintiffs' SWAT team argument fails.

### 2. Property Damage Argument

Plaintiffs' second argument – that the officers did not clean up after their house was left in shambles – also fails. In essence, Plaintiffs assert that the officers' search was unreasonable because they destroyed property that was neither contraband nor the subject of the search warrant.[4] Plaintiffs seek to impose liability on Officer Jensen because he dumped items on the floor and did not "clean up" afterwards, and upon Detective Lalley because he did not intervene to require the police officers to "clean up." (R. 33-1, Pls.' Opp. Memo. at 5.)

As discussed above, Detective Lalley cannot be liable for the alleged constitutional

---

[4] Plaintiffs do not dispute that the search team was entitled to search any container or compartment large enough to hold a firearm or ammunition. (R. 33-1, Pls.' Opp. Memo. at 10.)

violations based on the other officers' conduct absent a showing of a causal connection or affirmative link to the alleged violation, *see Hildebrandt*, 347 F.3d at 1039, or that he caused or participated in the constitutional violation. *See Palmer,* 327 F.3d at 594. Once again, Plaintiffs make no arguments concerning this requirement. Thus, the Court turns to whether Officer Jensen violated Plaintiffs' constitutional rights by failing to clean up after the search. *Saucier,* 533 U.S. at 201; *Wilhelm*, 425 F.3d at 460.

Although "officers executing search warrants on occasion must damage property in order to perform their duty," *see Dalia,* 441 U.S. at 258, "[e]xcessive or unnecessary destruction of property in the course of a search may violate the Fourth Amendment." *United States v. Ramirez,* 523 U.S. 65, 71, 118 S.Ct. 992, 140 L.Ed.2d 191 (1998); *see also Tarpley v. Greene,* 684 F.2d 1, 9 (D.C. Cir. 1982) ("destruction of property that is not reasonably necessary to effectively execute a search warrant may violate the Fourth Amendment"). The ultimate inquiry, however, is whether Officer Jensen acted reasonably in conducting the search. *See Ramirez,* 523 U.S. at 71. The totality of the circumstances determines whether Officer Jensen's actions were reasonable. *See Garner*, 471 U.S. at 9.

Plaintiffs' only allegation against Officer Jensen is that he did not clean up after he emptied the content of the drawers onto the floor. Plaintiffs do not develop the factual basis for this argument nor do they cite any factually similar case law. *See Estate of Moreland v. Dieter,* 395 F.3d 747, 759 (7th Cir. 2005) (court will not search record to find evidence supporting plaintiffs' legal argument). Without more, the Court would be hard-pressed to conclude that Officer Jensen's failure to clean up after the search is of a constitutional magnitude.

Meanwhile, viewing the evidence in a light most favorable to Plaintiffs, the way in which

9

Officer Jensen searched for firearms and firearm ammunition in the dresser drawers placing the searched items on the floor is justified. Plaintiffs do not dispute the fact that after the police officers had searched through items, they would place the items in one area of the room so that the other police officers would know that those items had already been searched. As such, Officer Jensen's actions were not excessive or unnecessary and his conduct was reasonably necessary to effectuate the warrant's purpose. *See Ramirez*, 523 U.S. at 71; *Tarpley,* 684 F.2d at 9. Therefore, Officer Jensen did not violate Plaintiffs' Fourth Amendment rights against unreasonable searches and seizures.

### B. Clearly Established Constitutional Rights

Because Detective Lalley and Officer Jensen did not violate Plaintiffs' constitutional rights, the Court need not examine the second *Saucier* inquiry, namely, whether the constitutional right at issue was clearly established at the time of the police officers' conduct. *Id.* at 201; *Wilhelm*, 425 F.3d at 460.

### CONCLUSION

Because qualified immunity shields Detective Lalley and Officer Jensen from Plaintiffs' Section 1983 claims, the Court grants Defendants' Partial Motion for Summary Judgment.

**Dated:** February 2, 2006

ENTERED

_____
**AMY J. ST. EVE**
**United States District Court Judge**